1  KAREN P. HEWITT
   United States Attorney
2  STEVEN DE SALVO
   Assistant United States Attorney
3  California State Bar No. 199904
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7032
   Facsimile: (619) 235-7837
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,      ) Criminal Case No. 08CR1436-LAB
   |                                 )
11 |            Plaintiff,          ) **UNITED STATES' RESPONSE AND
   |                                 ) OPPOSITION TO DEFENDANT BARRAZA'S
12 |      v.                        ) AND HERNANDEZ'S MOTIONS:**
   |                                 )
13 | ROBERT BARRAZA (2) and         ) **(1) TO COMPEL DISCOVERY;**
   | CUAUHTLAHTOUAC HERNANDEZ (3), )
14 |                                 ) **UNITED STATES' RESPONSE AND
   |            Defendants.         ) OPPOSITION TO DEFENDANT HERNANDEZ'S
15 |                                 ) MOTIONS:**
   |                                 )
16 |                                 ) **(2) PRESERVE EVIDENCE;**
   |                                 )
17 |                                 ) **(3) SUPPRESS EVIDENCE;**
   |                                 )
18 |                                 ) **(4) SUPPRESS STATEMENTS; AND**
   |                                 )
19 |                                 ) **(5) FOR LEAVE TO FILE FURTHER MOTIONS.**
   |                                 )
20 |                                 ) Date:     June 16, 2008
   |                                 ) Time:     2 p.m.
21 |                                 ) Honorable: Larry A. Burns

27 //
28 //

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Steven De Salvo, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant Hernandez's and Barraza's Motion for discovery, and Defendant Hernandez's motions to suppress evidence and statements, and motion for leave to file further motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

# I

# STATEMENT OF FACTS

The United States incorporates all facts contained in the Probable Cause Statement, attached hereto as Exhibit A, which was initially included with the initial complaint.

# II

# UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

## A. DEFENDANT HAS BEEN PROVIDED WITH ALL DISCOVERY

Defendant Cuauhtlahtouac Hernandez ("Hernandez") has moved to compel discovery and to preserve evidence, and defendant Robert Barraza has joined in that motion. The United States has provided all written discovery to Defendants. The United States also has provided all video recorded statements by Defendants and material witnesses. As to the specific discovery and evidentiary requests of Defendant, the Government responds as follows:

### 1. The Government Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure

The government has disclosed Defendant's statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (defendant's relevant written or recorded statements, written records containing substance of defendant's oral statements *in response to government interrogation*, and defendant's grand jury testimony).

### 2. Dispatch Tapes and Radio Traffic

Defendants have requested that law enforcement agents provide copies of the dispatch tapes and radio traffic in this case. The U.S. Attorney's Office has requested that the agents obtain the records.

1  The discovery will be provided to Defendants, if such tapes exist, when they are provided to the U.S.
2  Attorney's Office.

3        3.    <u>The Government Will Comply With Rule 16(a)(1)(D)</u>

4      The defendant has been provided with his or her own "rap" sheet and the government will
5  produce any additional information it uncovers regarding defendant's criminal record. Any subsequent
6  or prior similar acts of defendant that the government intends to introduce under Rule 404(b) of the
7  Federal Rules of Evidence will be provided, along with any accompanying reports, at the reasonable time
8  in advance of trial.

9        4.    <u>The Government Will Comply With Rule 16(a)(1)(E)</u>

10      The government will permit defendant to inspect and copy or photograph all books, papers,
11  documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material
12  to the preparation of defendant's defense or are intended for use by the government as evidence-in-chief
13  at trial or were obtained from or belong to defendant.

14      Reasonable efforts will be made to preserve relevant physical evidence which is in the custody
15  and control of the investigating agency and the prosecution, with the following exceptions: drug
16  evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles
17  are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are
18  frequently kept for only a short period of time and may no longer be available. Counsel should contact
19  the Assistant assigned to the case two weeks before the scheduled trial date and the Assistant will make
20  arrangements with the case agent for counsel to view all evidence within the government's possession..

21        4.    <u>The Government Will Comply With Rule 16(a)(1)(F)</u>

22      The government will permit defendant to inspect and copy or photograph any results or reports
23  of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are
24  within the possession of the government, and by the exercise of due diligence may become known to the
25  attorney for the government and are material to the preparation of the defense or are intended for use by
26  the government as evidence-in-chief at the trial. Counsel for defendant should contact the Assistant
27  United States Attorney assigned to the case and the Assistant will make arrangements with the case agent
28  for counsel to view all evidence within the government's possession.

5. The Government Will Comply With Its Obligations Under <u>Brady v. Maryland</u>

The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to the accused, or that pertains to the credibility of the government's case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted). <u>See</u> also <u>United States v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any pretrial privileges not contained in the Federal Rules of Criminal Procedure).

6. Discovery Regarding Government Witnesses

<u>Agreements</u>. The Government will disclose the terms of any agreements by Government agents, employees or attorneys with witnesses that testify at trial. Such information will be provided at the time of the filing of the Government's trial memorandum.[1/] The Government will comply with its obligations to disclose impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

<u>Bias or Prejudice</u>. The Government will provide information related to the bias, prejudice or other motivation to lie of Government trial witnesses as required in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

<u>Criminal Convictions</u>. The Government has produced or will produce any criminal convictions of Government witnesses plus any <u>material</u> criminal acts which did not result in conviction. The Government is not aware that any prospective witness is under criminal investigation.

---

1/ As with all other offers by the Government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the Government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the Government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

4

08CR1436-LAB

1  <u>Ability to Perceive</u>.  The government will produce in discovery any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

4  <u>Witness List</u>.  The Government will endeavor to provide the defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required.  See <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to the production of addresses or phone numbers of possible Government witnesses.  See <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974).  The defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

12  <u>Witnesses Not to Be Called</u>.  The Government is not required to disclose all evidence it has or to make an accounting to the defendant of the investigative work it has performed.  <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); <u>see</u>  <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).  Accordingly, the Government objects to defendant's request for discovery concerning any individuals whom the Government does not intend to call as witnesses.

17  <u>Favorable Statements</u>.  The Government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning the defendant which meet the requirements of <u>Brady</u>.

20  <u>Review of Personnel Files</u>.  The Government has requested a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material.  The Government has requested that counsel for the appropriate federal law enforcement agency conduct such review.  <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996); <u>see, also</u>, <u>United States v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir. 1992); <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

25  Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v. Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." <u>United States v. Cadet</u>, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its

possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

<span style="margin-left:2em"></span>Government Witness Statements.  Production of witness statements is governed by the Jencks Act (Title 18, United States Code, Section 3500) and need occur only after the witness testifies on direct examination. United States v. Taylor , 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies.  Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum before trial, provided that defense counsel has complied with defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that time.

<span style="margin-left:2em"></span>7.<span style="margin-left:2em"></span>The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection.  If certain rough notes become relevant during any evidentiary proceeding,  those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981).

<span style="margin-left:2em"></span>8.<span style="margin-left:2em"></span>All Investigatory Notes and Arrest Reports

The government objects to the defendant's request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to the defendant.  Such reports, except to the extent that they include Brady material or the statements of defendant, are

protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in connection with the investigation or prosecution of the case."

Although agents' reports have already been produced to the defense, the government is not required to produce such reports, except to the extent they contain <u>Brady</u> or other such material. Furthermore, the government is not required to disclose all evidence it has or to render an accounting to defendant of the investigative work it has performed. <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).

    9. <u>Expert Witnesses</u>.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the Government will provide the defense with notice of any expert witnesses the testimony of whom the Government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. Reciprocally, the Government requests that the defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

    10. <u>Information Which May Result in Lower Sentence</u>.

Defendant claims that the Government must disclose information about any cooperation or any attempted cooperation with the Government as well as any other information affecting defendant's sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>. The Government respectfully contends that it has no such disclosure obligations under <u>Brady</u>.

The Government is not obliged under <u>Brady</u> to furnish a defendant with information which he already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977). <u>Brady</u> is a rule of disclosure. There can be no violation of <u>Brady</u> if the evidence is already known to the defendant. Assuming that defendant did not already possess the information about factors which might affect their respective guideline ranges, the Government would not be required to provide information bearing on defendant's mitigation of punishment until after defendant's conviction or plea of guilty and prior to his sentencing date. "No [<u>Brady</u>] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." <u>United States v. Juvenile Male</u>, 864 F.2d 641 (9th Cir. 1988).

**B.     DEFENDANT'S MOTIONS TO SUPPRESS STATEMENTS SHOULD BE DENIED**

    1.     <u>Hernandez Was Seized In Compliance with Fourth Amendment</u>

Border Patrol agents may stop a vehicle based on specific, articulable facts, and draw rational inferences from those facts, establishing reasonable suspicion that the vehicle contains aliens who may be legally in the United States. See <u>United States v. Sokolow</u>, 490 U.S. 1, 7-8 (1989); <u>United States v. Brignoni-Ponce</u>, 422 U.S. 837, 878 (1975). To put it differently: an agent may stop a vehicle for investigatory purposes if the agent can articulate facts forming a basis for a particularized suspicion of criminal activity. See <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981).

Reasonable suspicion has two elements. First, it must be based on the totality of the circumstances. Second, there must be suspicion that the individual to be stopped has, or is about to, commit a crime. See <u>United States v. Arvizu</u>, 534 U.S. 266 (2002); <u>United States v. Montero-Camargo</u>, 208 F.3d 1122, 1129 (9th Cir. 2000). Some non-exhaustive, non-dispositive factors upon which Border Patrol agents may rely in finding reasonable suspicion include: (1) the characteristics of the area in which they encounter a vehicle; (2) the vehicle's proximity to the border; (3) usual patterns of traffic on the particular road; (4) information about previous illegal border crossings in the area; (5) whether certain vehicles are commonly used to transport contraband or aliens; (6) the driver's erratic behavior or obvious attempts to evade the officer; and (7) a heavily loaded vehicle or an unusual number of passengers. <u>Brignoni-Ponce</u>, 422 U.S. at 884-85; <u>United States v. Olafson</u>, 213 F.3d 435, 439 (9th Cir. 2000).

The Supreme Court has stressed that objective facts, when viewed by trained law enforcement officers and combined with fair deductions from such facts, can form the basis to stop a vehicle – even if those facts might be meaningless to the untrained observer or consistent with innocent travel. See <u>Arvizu</u>, 534 U.S. at 273-74 (Border Patrol agent could assess the situation in light of his specialized training and familiarity with the area); <u>Cortez</u>, 449 U.S. at 419. In other words, factors which might be consistent with innocent travel also can amount to reasonable suspicion. See <u>Arvizu</u>, 534 U.S. at 277-78; <u>United States v. Diaz-Juarez</u>, 299 F.3d 1138, 1141 (9th Cir. 2002) ("Individual factors that may appear innocent in isolation may constitute suspicious behavior when aggregated together."). This means that reasonable suspicion "need not rule out the

possibility of innocent conduct." Arvizu, 534 U.S. at 277-78. Indeed, the Fourth Amendment allows the risk that innocent persons may be stopped. See Illinois v. Wardlow, 528 U.S. 119, 126 (2000).

In light of the above Brignoni-Ponce factors, and in light of the rule that agents need not rule out the possibility of innocent conduct, the agents had reasonable suspicion to stop Hernandez's vehicle. First, the stop occurred only a few miles north of the border, in areas heavily traveled by aliens and smugglers. The vehicle traveled on Interstate 8, and had exited at three exits: Willows Springs Road, near the Viejas Casino; Mountain Springs Road, and the Jacumba exit. All of these locations are areas commonly used by alien smugglers in the transportation of aliens. See Probable Cause Statement, attached hereto as Exhibit A. Second, Hernandez engaged in maneuvers that appeared evasive. The vehicle traveled eastbound on Interstate 8, exited at Mountain Springs, and then headed westward on Interstate 8 before pulling off at the Jacumba exit. After visiting a convenience store, Hernandez then drove the vehicle westbound on Interstate and exited at Crestwood Road, where he parked at the Golden Acord Casino. See Exhibit A. Such maneuvers are often employed by alien smugglers in order to "scout the route"for the upcoming load vehicle. Id. These turnarounds are relevant factors in the analysis. United States v. Garcia-Barron, 116 F.3d 1305, 1307 (9th Cir. 1997). Third, agents observed Hernandez's vehicle and the later-determined load vehicle traveling in tandem – and the load vehicle later greatly accelerated, and then passed Hernandez's vehicle, in an apparent evasive maneuver. Just minutes before, agents had observed the two cars stop at the Viejas Casino and saw the four occupants converse in the parking lot, before driving away. See Exhibit A. Such tandem behavior is a relevant factor in the analysis. United States Montero-Camargo, 208 F.3d 1122, 1139 (9th Cir. 2001).

All of these factors, considered together, gave reasonable suspicion that alien smuggling was afoot. Hernandez, however, isolates each factor and argues that each is consistent with innocent conduct. This is precisely the sort of "divide-and-conquer" strategy expressly condemned by the Supreme Court in United States v. Arvizu, 534 U.S. 266 (2002) Arvizu explained that while each of the series of the acts is "perhaps innocent in itself," when considered together they will often add up to reasonable suspicion. Arvizu, 534 U.S. at 274. Thus, it is improper to reject isolated facts simply

because there might be an innocent explanation.  These facts must be considered together; in this case, they add up to reasonable suspicion that Hernandez was involved in alien smuggling.

Moreover, the United States expects the evidence to show that the reasonable suspicion to stop bloomed into probable cause to arrest Hernandez when the load car led agents on a dangerous chase and, after the car went out of control and stopped, numerous aliens fled from the load vehicle. This is especially true in light of the fact that the "collective knowledge" of investigating officers, even where communications between the officers do not occur, may be used to support probable cause to arrest.  United States v. Del Viso, 918 F.2d 821, 825-26 (9th Cir. 1990).

2.     Agents Did Not Engage in Coercive Tactics That Rendered Statements Involuntary

Hernandez argues that the agents engaged in "significant physical and psychological intimidation," because: (1) the agents drove him 10 miles in the wrong direction on Interstate 8, away from the El Cajon Border Patrol Station where he was eventually booked; (2) he was placed in a "curious" border patrol station before he was transported to the El Cajon station; and (3) co-defendants Robert Barraza and Dominick Smith, who looked dirty and beaten up, were escorted past Hernandez – who then surmised that he would be beaten up if he didn't cooperate, "like they do on T.V."  Defendant's Brief at 16-17; Defendant's Declaration ¶ 44..

A confession is involuntary when, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne."  United States v. Leon Guerrero, 847 F.2d 1363, 1365-66 (9th Cir. 1988).   In this case, there is no objective, reasonable evidence to conclude that Defendant's "will was overborne."  His fears were entirely subjective – the result of Defendant's unsupported speculation about the agent's motives and his overactive imagination, apparently fueled by television dramas.  Plainly, this is not the stuff of an involuntary confession.  Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

//
//
//

# IV

# **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court deny Defendant's motions except where unopposed.

DATED: June 9, 2008

                                Respectfully Submitted,

                                KAREN P. HEWITT
                                United States Attorney

                                /s/  Steven De Salvo

                                STEVEN DE SALVO
                                Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ROBERT BARRAZA (2) and<br>CUAUHTLAHTOUAC HERNANDEZ (3),<br><br>　　　　　　　　　Defendants. | Criminal Case No. 08CR1436-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

　　　I, STEVEN DE SALVO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　　I am not a party to the above-entitled action. I have caused service of the GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　　**Frank Murphy**
　　　**Kurt David Hermansen**
　　　**Stephen Demik**
　　　**Julie A. Blair**

　　　I declare under penalty of perjury that the foregoing is true and correct.

　　　Executed on June 9, 2008.

　　　　　　　　　　　　　　　　　　　　　　　s/ Steven De Salvo
　　　　　　　　　　　　　　　　　　　　　　　STEVEN DE SALVO