1  LAW OFFICE OF KURT DAVID HERMANSEN
   Kurt David Hermansen, Cal. Bar No. 166349
2  110 West C Street, Suite 1810
   San Diego, California 92101-3909
3  Telephone:    (619) 236-8300
   Facsimile:    (619) 236-8400
4  KDH@KurtDavidHermansen.com
   Attorney for Defendant
5  CUAUHTLAHTOUAC HERNANDEZ

6

7

8

9                      UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11   ─────────────────────────────────

12  UNITED STATES OF AMERICA,          )   Case No.  08cr1436 LAB
                                       )
13                   Plaintiff,        )   DEFENDANT'S *REPLY* TO GOVERN-
                                       )   MENT'S RESPONSE AND OPPOSITION
14  v.                                 )   [DOC. 30]
                                       )
15  CUAUHTLAHTOUAC HERNANDEZ,          )
                                       )
16                   Defendant.        )
                                       )
17
                     ─────────────────────────────────
18

19  I.    **INTRODUCTION**

20       Mr. Hernandez submits the instant reply brief to address three arguments made by the

21  government in its "response and opposition" to defendants' motions. *See* Doc. 24 filed 5/12/08

22  and amended as Doc. 26 filed 5/27/08.

23       First, Mr. Hernandez writes to address the government's response to his motion to

24  compel the disclosure of dispatch and radio traffic tapes from the agents' April 6, 2008

25  surveillance of the Dodge Ram and the Ford Escort. Second, Mr. Hernandez writes to address

26  the government's argument that reasonable suspicion existed to stop Mr. Hernandez's Ford

27  Escort at the Golden Acorn Casino. Finally, Mr. Hernandez writes to address the government's

28

1  argument that Mr. Hernandez's statements were not made as a result of coercive tactics by

2  border patrol agents.

3  **II.     DEFENSE COUNSEL NEEDS THE GOVERNMENT TO DISCLOSE THE**

4  **DISPATCH AND RADIO TRAFFIC TAPES ON OR BEFORE JUNE 11, 2008.**

5  In its response to Mr. Hernandez's request for dispatch and radio tapes of the agents'

6  April 6, 2008 surveillance of the Dodge Ram and Ford Escort, the government states: "The U.S.

7  Attorney's Office has requested that the agents obtain the records [of the tapes]. The discovery

8  will be provided to Defendants, if such tapes exist, when they are provided to the U.S.

9  Attorney's Office." *See* Gov't Response (Doc. 30) pp. 2-3. The government's response goes

10  on to state:

11          records of radio transmissions, if they existed, are frequently kept
        for a short period of time and may no longer be available. Counsel

12          should contact the Assistant assigned to the case two weeks before
        the scheduled trial date and the Assistant will make arrangements

13          with the case agent for counsel to view all evidence within the
        government's possession.

14  *Id*. at 3.

15      **A.     The Dispatch and Radio Traffic Tapes are Material to Mr. Hernandez's**

16          **Defense and Are Needed to Prepare for the Motion Hearing.**

17  There were at least four border patrol agents surveying the Dodge Ram and Ford Escort,

18  allegedly driving in "tandem" on April 6, 2008. *See* Bates Stamp ("BS") pp. 7-14.[1] Since it

19  appears that the four border patrol agents were driving in separate vehicles, it is very likely that

20  the agents were communicating with each other via radio traffic.

21  In his First Amended Motion to Suppress Evidence and Statements, filed on May 27,

22  2008, Mr. Hernandez asserted that his unlawful detainment at the Golden Acorn Casino led to

23  his unlawful arrest. There is clearly an issue as to whether agents had reasonable suspicion to

24  stop Mr. Hernandez's Ford Escort, as well as whether agents had probable cause to arrest him.

25  These issues are material to Mr. Hernandez's defense because evidence unfavorable to

26  Mr. Hernandez, which was obtained as a result of the unlawful detention and arrest, may

27

28

---

[1] The Bates Stamp citations refer to the discovery pages provided to defense counsel by the government.

1  ultimately be excluded from Mr. Hernandez's trial.  Defense counsel has a good faith basis to

2  believe that the tapes will show the agents did not have reasonable suspicion to stop the Ford

3  Escort, and will show the agents did not have probable cause to arrest Mr. Hernandez.

4       For the foregoing reasons, the dispatch and radio tapes are material and must be provided

5  to defense counsel pursuant to Fed. R. Crim. P. 16 (a)(1)(E)(i).

6  **B.     Defense Counsel Has Complied With Fed. R. Crim. Proc. 16.**

7       On May 12, 2008, Mr. Hernandez filed his first motion to compel discovery pursuant to

8  Fed. R. Crim. P. 16, and sought disclosure of dispatch and radio traffic tapes.  Motion Doc. 24

9  p. 3.  On May 27, 2008, Mr. Hernandez filed his first amended motion to compel discovery, and

10  sought disclosure of dispatch and radio traffic tapes.  Doc. 26 p. 6.  On May 20, 2008, defense

11  counsel faxed an informal letter to the government "specifically renew[ing]" his request for

12  tapes of radio traffic and dispatch.  Finally, on June 9, 2008, defense counsel sent the govern-

13  ment an email and again, requested the recorded dispatch and radio traffic tapes.  Although the

14  government asked law enforcement to obtain such tapes, it is defense counsel's understanding

15  that the government has been unable to obtain the tapes from the agents.

16       Defense counsel has attempted to obtain these tapes before the motion hearing to no

17  avail.  Defense counsel will be unable to effectively cross-examine the border patrol agents at

18  the June 16, 2008 motion hearing without first reviewing the tapes.  Unless defense counsel

19  obtains the tapes on or before June 11, 2008, defense counsel will be seeking a continuance

20  pursuant to Fed. R. Crim. P. 16(c)(2)(B) (if a party fails to comply with Rule 16, the court may

21  grant a continuance).

22  **C.     Defense Counsel Needs the Discovery Before Leaving for the Death Penalty**

23  **Conference.**

24       Defense counsel will be attending the Habeas Institute's Federal Post-Conviction Skills

25  Seminar from June 12, 2008 to June 15, 2008, in San Francisco, California.  In order to prepare

26  for the motion hearing scheduled for Monday, June 16, 2008, defense counsel needs to obtain

27  the tapes the day before leaving, namely June 11, 2008.

28

1    **D.    Conclusion.**

2        For the foregoing reasons, Mr. Hernandez requests the Court grant his motion to compel

3    disclosure of the dispatch and radio traffic tapes to defense counsel on or before June 11, 2008.

4    If the government cannot provide the tapes to defense counsel on or before June 11, 2008,

5    Mr. Hernandez requests the Court grant a continuance with regard to his motion to exclude

6    evidence and statements.

7    **III.    AN EVIDENTIARY HEARING ON MR. HERNANDEZ'S MOTION TO**

8    **SUPPRESS EVIDENCE AND STATEMENTS WILL SHOW THAT**

9    **Mr. HERNANDEZ WAS UNLAWFULLY SEIZED IN VIOLATION OF WITH**

10    **THE FOURTH AMENDMENT**.

11        In its response, the government argues there are three factors, when "considered

12    together," support a finding that the agents had reasonable suspicion to stop Mr. Hernandez's

13    vehicle on April 6, 2008.  Gov't Response Doc. 30 p.9.  The government also states that "the

14    United States expects the evidence to show that the reasonable suspicion to stop bloomed into

15    probable cause to arrest [Mr.] Hernandez."  *Id*. at 10 (emphasis added).  The government may

16    well expect the evidence at the motion hearing to support a finding of reasonable suspicion and

17    probable cause.  However, in his motion to suppress evidence and statements, Mr. Hernandez

18    "allege[d] facts with sufficient definiteness, clarity, and specificity to enable the trial court to

19    conclude that contested issues of fact [related to the detention and arrest of Mr. Hernandez]

20    exist."  United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000).  Therefore, at the conclusion

21    of the evidentiary hearing, the government is free to argue there was reasonable suspicion to stop

22    and probable cause to arrest Mr. Hernandez on April 6, 2008.  However, Mr. Hernandez

23    continues to maintain that he was unlawfully detained and arrested.  Thus, he requests the Court

24    exclude his statements allegedly made at the El Cajon Border Patrol Station, as well as any fruits

25    obtained from his Ford Escort and his person.

26

27

28

1     **IV.**    **A REASONABLE PERSON IN Mr. HERNANDEZ'S SHOES WOULD HAVE**

2            **OBJECTIVELY BELIEVED HE HAD TO MAKE STATEMENTS DURING**

3            **INTERROGATION.**

4        The government cites *United States v. Leon-Guerrero*, 847 F.2d 1363, 1365-66 (9th Cir.

5 1988), to support its argument that Mr. Hernandez's "will was [not] overborne." Gov't

6 Response Doc. 30 p. 10. In *Leon-Guerrero*, 847 F.2d at 1367, the court held that Leon-

7 Guerrero's statements were not involuntary for reasons completely distinguishable from

8 Mr. Hernandez's case.

9        In *Leon-Guerrero*, 847 F.2d at 1365, the defendant voluntarily appeared at the Guam FBI

10 office and told an FBI agent he wanted to "cooperate with the investigation." The United States

11 Attorney spoke with Leon-Guerrero and told Leon-Guerrero that "his cooperation would be

12 taken into consideration in any future handling of cases involving him, that whether to cooperate

13 was his choice, and that he had the right not to cooperate." *Id*. Subsequently, Leon-Guerrero

14 confessed to committing the crime of paying "kickbacks" to several Guam government officials.

15 *Id*.

16        In finding that Leon-Guerrero's statements were not involuntary, the court held that the

17 United States Attorney's statement that Leon-Guerrero's cooperation would be taken into

18 consideration was "not sufficiently compelling to overbear his free will and rational intellect."

19 *Id*. at 1367. A promise made by the government "must be sufficiently compelling to overbear

20 the suspects' will in light of all attendant circumstances." *Id*. at 1366.

21        Here, Agent Denise did not tell Mr. Hernandez his cooperation would be taken into con-

22 sideration by the United States Attorney. Mr. Hernandez did not initiate a conversation with

23 Agent Denise regarding cooperating with the investigation. Unlike in *Leon-Guerrero*, Agent

24 Denise never told Mr. Hernandez he could choose not to cooperate with agents. *See Leon-*

25 *Guerrero*, 837 F.2d at 1367 (in holding his statements were voluntary, the court stated that

26 Leon-Guerrero was an educated businessman, came to visit the FBI office on three different oc-

27 casions, and was told by the United States Attorney that he did not have to cooperate if he did

28 not want to). Mr. Hernandez asked Agent Denise what was going on. *See Hernandez Decl.*

Doc. 26-3.  In response, Agent Denise told Mr. Hernandez that he would get him some food, ask

him some questions and then, take him to the trolley station.  Agent Denise did not promise

Mr. Hernandez leniency at the time of sentencing.  Instead, Agent Denise promised Mr. Her-

nandez freedom in exchange for his statements.  A promise of freedom, like the one made by

Agent Denise, is one that is "sufficiently compelling to overbear [Mr. Hernandez's] will in light

of all . . . [the] circumstances.  *Leon-Guerrero*, 847 F.2d 1363.

In response to the Government's brief with regard to Mr. Hernandez's "subjective . . . un-

supported speculation about the agent's motives and his overactive imagination, apparently

fueled by television dramas," Mr. Hernandez's beliefs about what happens on television is not

misplaced.  *See* Gov't Response Doc. p. 10.  Mr. Hernandez did undoubtedly subjectively

believe he would be harmed by agents if he did not talk to them.  However, under the totality

of the circumstances (i.e., seeing his two co-defendants being hauled into the border patrol sta-

tion, looking dirty and beaten up, being paraded by agents past Mr. Hernandez's cell, and being

handcuffed to benches), Mr. Hernandez objectively believed he would be injured by agents if

he refused to give them statements.  The coercive conduct of the agents at the border patrol

station coupled with Mr. Hernandez being driven ten miles east of the Golden Acorn Casino and

being placed in a curious border patrol station without being questioned, supports a finding of

a coercive environment, which would, under the totality of the circumstances, overbear the will

of a twenty-year old, G.E.D. educated man.

## V.    CONCLUSION.

For the reasons stated above, Defendant respectfully requests that this Court grant the

Motions filed as Doc. 26.

Dated: *June 10, 2008*                          *s/Kurt David Hermansen*
                                                               Attorney for Defendant
                                                Email:  KDH@KurtDavidHermansen.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08cr1436 LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| CUAUHTLAHTOUAC HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, KURT DAVID HERMANSEN, am a citizen of the United States and am at least eighteen years of age.  My business address is 110 West C Street, Suite 1810, San Diego, California 92101.

I have caused service of **DEFENDANT'S** *REPLY* **TO GOVERNMENT'S RESPONSE AND OPPOSITION [DOC. 30]**.  The following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

**Julie A Blair**    julieannblair@hotmail.com
**Steven D De Salvo**    steven.desalvo@usdoj.gov, maria.richardson@usdoj.gov
**Stephen Demik**    stephen_demik@fd.org, sylvia_freeman@fd.org
**Kurt David Hermansen**    KDH@KurtDavidHermansen.com
**Frank M Murphy , III**    fmlaw@san.rr.com, fmurphy1@san.rr.com
**Neil R Trop**    neiltroplaw@hotmail.com
**U S Attorney CR**    Efile.dkt.gc2@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.
Executed on: *June 10, 2008*              *s/Kurt David Hermansen*
                                                                                    Attorney for Defendant
                                                              Email:  KDH@KurtDavidHermansen.com