1  LAW OFFICE OF KURT DAVID HERMANSEN
   Kurt David Hermansen, Cal. Bar No. 166349
2  110 West C Street, Suite 1810
   San Diego, California  92101-3909
3  Telephone:   (619) 236-8300
   Facsimile:    (619) 236-8400
4  KDH@KurtDavidHermansen.com
   Attorney for Defendant
5  CUAUHTLAHTOUAC HERNANDEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No.  08cr1436 LAB |
|---|---|
| Plaintiff, | ) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS *IN LIMINE* TO: |
| | ) 1. sever Mr. Hernandez's trial from co-defendant Isaac Espinoza's trial; |
| | ) 2. exclude evidence of Mr. Hernandez's other crimes, wrongs or acts under Fed. R. Evid. 404(b): |
| v. | ) 3. exclude evidence of co-defendant Isaac Espinoza's other crimes, wrongs or acts under Fed. R. Evid. 401, 403 and 404(b); |
| | ) 4. exclude evidence of incriminatory statements of co-defendants Dominique Smith and Robert Barraza under *Crawford v. Washington*; |
| | ) 5. exclude expert testimony or, in the alternative, hold a *Kumho* hearing; and |
| CUAUHTLAHTOUAC HERNANDEZ, | ) 6. admit evidence of co-defendants Dominique Smith, Robert Barraza and Isaac Espinoza's third party culpability. |
| Defendant. | ) |

1  I.    **STATEMENT OF THE CASE**

2     On May 6, 2008, a San Diego grand jury returned an Indictment against four co-
3  defendants: (1) Dominique Smith; (2) Robert Barraza; (3) Isaac Espinoza; and (4) Cuauhtlah-
4  touac Hernandez. All four men were charged with three counts of transporting an illegal alien.

5     <u>Count one</u> charged the men with transportation of an illegal alien, **Clemente Morales-**
6  **Chaparro**, in violation of 8 U.S.C. § 1324(a)(1)(ii) and (v)(II). <u>Count two</u> charged the men
7  with transportation of an illegal alien, namely **Roberto Aguilar-Perez**, in violation of 8 U.S.C.
8  § 1324(a)(1)(ii) and (v)(II). <u>Count three</u> charged the men with transportation of an illegal alien,
9  namely **Rogelio Oplea-Mendoza**, in violation of 8 U.S.C. § 1324(a)(1)(ii) and (v)(II).

10    On July 1, 2008, Robert Barraza pleaded guilty to counts 1-3 as alleged in the Indictment.
11 *See* Docket #40. On July 17, 2008, Dominique Smith pleaded guilty to counts 1-3 as alleged
12 in the Indictment. *See* Docket #46. Although the district court has not yet accepted their guilty
13 pleas, the Honorable Magistrate Judge Ruben B. Brooks has recommended that the district court
14 accept both men's guilty pleas. *See* Docket #41 and #48.

15    Isaac Espinoza and Mr. Hernandez are ***both*** scheduled to go to trial on August 19, 2008,
16 in front of the Honorable Larry A. Burns, United States District Court Judge. *See* Docket #33.

17 II.   **STATEMENT OF FACTS**

18    A.    **Facts Relating to Mr. Hernandez's 404(B)**

19    On December 21, 2004, Mr. Hernandez was detained at the San Ysidro Port of Entry
20 ("POE") for alleged alien smuggling. Bates Stamp ("BS") 198.[1/] Mr. Hernandez was only 16
21 years-old at the time.

22    According to Border Patrol Agent ("Agent") Miguel Cadena's Report of Investigation
23 ("ROI"), at around 2 p.m., on December 21, 2004, Mr. Hernandez was a passenger in his girl-
24 friend, Diana Becerra's, vehicle. BS 199. Diana Becerra attempted to gain entry into the
25 United States from Mexico. *Id*. Two undocumented persons were "concealed in the rear of
26 [Diana Becerra's] vehicle." *Id*.

27

28
---
[1/]   "Bates Stamp" refers to the pages of discovery as provided to defense counsel by the government.

1       According to Agent Cadena's ROI, Diana Becerra told border patrol agents that she agreed to smuggle the two undocumented people into the United States for financial gain. BS 199-200. Diana Becerra also told border patrol agents that she was going to be paid $300 and her boyfriend, Mr. Hernandez, was going to be paid $200. BS 200.

    Although the driver and owner of the vehicle, Diana Becerra, allegedly admitted to border patrol agents that she agreed to smuggle the undocumented people into the United States for financial gain, Agent Cadena's ROI *does not* allege that Mr. Hernandez made any incriminating statements. BS 198-200.

    To date, the government has not given defense counsel *any* notice that it intends to offer this 404(b) evidence in either its case-in-chief, to impeach Mr. Hernandez, or during rebuttal.

**B.    Facts Relating to Co-defendant Isaac Espinoza's Other Bad Act Evidence**

    On April 6, 2008, Supervisory Border Patrol Agent ("SA") Jeffrey Denise, observed two vehicles traveling eastbound on Interstate 8, near Alpine, California. BS 11. The first vehicle was a blue Ford Escort ("Ford Escort"), later identified as Mr. Hernandez's vehicle. *Id*. The second vehicle was a green Dodge Ram 2500 pick-up truck ("pick-up truck"), California license plate number 5M48195. *Id*. SA Denise believed that the pick-up truck was riding in "tandem" with the Ford Escort. *Id*. He recognized this as a "common [alien] smuggling tactic." *Id*.

    At some point during his surveillance of the two vehicles, SA Denise recognized the pick-up truck "as a possible load vehicle identified by ECAT on April 3, 2008." BS 12. On April 3, 2008, Agent Benjamin Blanchard observed the same pick-up truck "perform a turnaround at the Pine Valley Exit of . . . Interstate 8." *Id*. According to Agent Joseph Remenar's ROI, "the Pine Valley Exit is a notorious alien smuggling corridor due to its location west of the Border Patrol Checkpoint located on the westbound lanes of Interstate 8." *Id*. According to Agent Remenar, alien smugglers use the Pine Valley exit to pick up their "illicit cargo" and are able to avoid detection by border patrol. *Id*. Alien smugglers load undocumented persons on the "south side of Interstate 8 while traveling east, [and exit] at Pine Valley, and quickly re-enter . . . the westbound lanes of the Interstate," wholly avoiding the Border Patrol Checkpoint. *Id*.

1    On April 3, 2008, agents pulled the pick-up over after making the Pine Valley turnaround
2  in Chula Vista. *Id*. The driver was identified as Isaac Espinoza. *Id*. Although **no undoc-**
3  **umented persons** were found inside the pick-up truck on April 3, 2008, and agents let Isaac
4  Espinoza go after a brief detention, this information factored into the agents' April 6, 2008
5  reasonable suspicion analysis. *Id*.

6    When agents finally detained the Ford Escort at the Golden Acorn Casino on April 6,
7  2008, they found Mr. Hernandez and Isaac Espinoza in the vehicle. BS 13. Mr. Hernandez was
8  the owner and driver of the Ford Escort. *Id*. Isaac Espinoza was the passenger in the Ford
9  Escort. *Id*.

10   SA Denise testified at Mr. Hernandez's June 16, 2008 suppression hearing. At that hear-
11 ing, SA Denise testified as to how he recognized the pick-up truck on April 6, 2008. He
12 testified that he recognized the "green dodge pickup" from a few days prior, "somewhere around
13 April Third." RT 19, ln 6-9. SA Denise testified that he wrote down the pickup truck's license
14 plate number and had the "notes with [him]" on April 6, 2008, while surveying the pick-up truck
15 and the Ford Escort. RT 19, ln 10-14. SA Denise testified that he "confirm[ed] that [the pickup
16 truck from April 6, 2008], was the same vehicle [he had] seen three days before." RT 19, ln 15-
17 17. Finally, SA Denise testified that he pulled the same pick-up truck over on April 3, 2008,
18 and identified the driver as Isaac Espinoza. RT 20, ln 18-25 - RT 21, ln 1.

19   When defense counsel requested a copy of the note containing the license plate number
20 from April 3, 2008, and indicated the defense is entitled to it pursuant to JENKS, the Govern-
21 ment objected. RT 3-4. In response, the Court stated "What's the harm, Mr. Desalvo? If he's
22 got the paper with the license plate number of the van [sic] on it from April 3, why not hand it
23 over?" RT 117, ln 13-15. Since SA Denise was not sure whether he still had the note, the
24 Court asked him to look for it. RT 117, ln 15-16. The Court ruled, "If you've got it, turn it over
25 to [defense counsel, Kurt David Hermansen]." RT 117, ln 18-19.

26   To date, the government has not turned over SA Denise's note to defense counsel.
27 Moreover, the government has not given defense counsel notice that it plans to use Isaac
28 Espinoza's April 3, 2008 apprehension att trial in either its case-in-chief or in rebuttal.

  **C.**  **Facts Relating to *Crawford v. Washington***

  All four co-defendants were interrogated by border patrol agents. BS 16-19. Isaac Espinoza invoked his right to an attorney. BS 16. Mr. Hernandez initially made some statements but then invoked his right to silence. BS 16-17. Both Dominique Smith and Robert Barraza made statements that incriminate Mr. Hernandez. BS 17-19.

  Dominique Smith said that he spoke to his friends, Mr. Hernandez and Isaac Espinoza at Viejas Casino. BS 17.

  Robert Barraza told agents that he was following Mr. Hernandez's vehicle. BS 18. When asked about the Ford Escort that Isaac Espinoza and Mr. Hernandez were driving, Robert Barraza stated "the car that we were following." *Id*. Moreover, when agents asked Robert Barraza if he was getting paid for smuggling "paisas," he told them no. BS 19. However, when asked if his friends were doing it for free, Robert Barraza stated "I don't think they would." *Id*.

**III.**  **THIS COURT SHOULD SEVER MR. HERNANDEZ'S TRIAL FROM ISAAC ESPINOZA'S TRIAL**

  Under Fed. R. Crim. P. 14(a), the Court may sever the defendants' trials if joinder would prejudice the defendant.

  Severance is appropriate where "the defenses 'are antagonistic to the point of being mutually exclusive.'" *United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir. 1983) (quoting *United States v. Marable*, 574 F.2d 224, 231 (5th Cir. 1978). *See also United States v. De La Cruz Belanger*, 422 F.2d 723 (9th Cir. 1970); *Deluna v. United States*, 308 F.2d 140 (5th Cir. 1962) (a defense attorney has a duty to comment on the failure of a co-defendant to testify when defendant's interest requires such comment). Defenses are "mutually exclusive" where the "acquittal of one co-defendant would necessarily call for the conviction of the other." *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991).

  Where defendants present mutually exclusive defenses at a joint trial,

> [the] cross-examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant or to help rehabilitate a witness that has been impeached. Cross-examination of the defendant's witnesses provides further opportunities for impeachment and the ability to undermine the defendant's case. The presentation of the codefendant's case

>becomes a separate forum in which the defendant is accused and tried.

*Tootick*, 952 F.2d at 1082. Here, both defendants will suffer prejudice because the jury will be unable to evaluate the guilt or innocence of each defendant on an individual basis. *See id*.

The Ninth Circuit has recognized that "'[t]he prototypical example is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed the crime.'" Mutual exclusivity also may exist when "only one defendant accuses the other, and the other denies any involvement." *Tootick*, 952 F.2d at 1081 (citing *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984)); *see also United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999). For example, in *Tootick*, co-defendants Mr. Tootick and Mr. Frank each claimed that the other acted alone in stabbing Mr. Hart, the victim. *See Mayfield*, 189 F.3d at 1081. There was no dispute that all three men were present at the scene, and that Mr. Hart did not injure himself. *Id*. Mr. Frank testified that he watched in horror as Mr. Tootick stabbed Mr. Hart. *Id*. Mr. Tootick, who did not testify, presented a defense that he passed out or was asleep throughout the episode. *Id*. These defenses, according to the Ninth Circuit, contradicted each other such that "the acquittal of one necessitat[ed] the conviction of the other." *Id*. Because the mutually exclusive defenses prevented the jury from determining the "guilt or innocence of each defendant on an individual and independent basis," the appellate court concluded that the joint trial resulted in substantial prejudice to both defendants and reversed their convictions. *Id*. at 1082.

Here, severance of Mr. Hernandez's and Isaac Espinoza's joint trial is appropriate. It is anticipated that Mr. Hernandez will implicate Isaac Espinoza, such that the acquittal of him would require the conviction of Isaac Espinoza. For example, if Mr. Hernandez presents a defense that Isaac Espinoza was involved in alien smuggling without telling Mr. Hernandez, then the jury would necessarily have to convict Isaac Espinoza if they accepted Mr. Hernandez's theory. *See Mayfield*, 189 F.3d at 900. Moreover, if Isaac Espinoza does not testify, the undersigned will use his silence against him.

1  Mayfield is instructive. In *Mayfield*, Gilbert and Mayfield were arrested in an apartment
2  linked to Gilbert, in which authorities discovered drugs and drug paraphernalia. *See Mayfield*,
3  189 F.3d at 897-98. Mr. Gilbert's confession asserted that Mayfield was the "main man" and
4  he presented a defense that he was not guilty because he did not have physical control over the
5  drugs since Mayfield bought them and owned them. *Id*. at 900.  The Ninth Circuit held that a
6  joint trial was inappropriate in part because "[i]t is beyond dispute that, if the jury accepted
7  Gilbert's defense, which was that Mayfield was the ringleader who had control over the drugs,
8  it necessarily had to convict Mayfield." *Id*.  Here, as in *Mayfield*, if Mr. Hernandez and Isaac
9  Espinoza present anticipated defenses that the other was the individual solely responsible for
10 smuggling aliens without the other's knowledge, a joint trial would involve each defendant's
11 counsel acting as a "second prosecutor" because "[i]n order to zealously represent his client,
12 each co-defendant's counsel must do everything possible to convict the other defendant."
13 *Tootick*, 952 F.2d at 1081. Under these circumstances, severance of Mr. Hernandez's and Isaac
14 Espinoza's cases is appropriate to ensure that the jury can "assess the guilt or innocence of each
15 defendant on an individual and independent basis." *Tootick*, 189 F.3d at 1082.
16  Moreover, if the Court does not sever Mr. Hernandez's trial from Isaac Espinoza's trial,
17 Mr. Hernandez will be prejudiced.  *See* Fed. R. Crim. P. 14(a).  Evidence that Isaac Espinoza
18 was driving the suspected load pick-up truck on April 3, 2008, just three days before the alleged
19 offense, is relevant to Isaac Espinoza's culpability but surely prejudicial to Mr. Hernandez. *See*
20 Fed. R. Evid. 401, 402 and 403.  If this information comes in during Mr. Hernandez's trial, the
21 jury will very likely convict him based on information that his passenger, and not himself, is
22 connected to the load pick-up truck.   Therefore, if the Court does not sever the trials,
23 Mr. Hernandez will be prejudiced and will not receive his fundamental rights to ***due process*** and
24 a fair trial.
25  For the foregoing reasons, Mr. Hernandez requests the Court sever Mr. Hernandez's trial
26 from Isaac Espinoza's trial.
27 **IV.  THIS COURT SHOULD EXCLUDE EVIDENCE OF Mr. HERNANDEZ'S**
28 **OTHER ACTS UNDER FED. R. EVID. 404(B) AND 608**

The Court should exclude evidence that in 2004, Mr. Hernandez was detained at the San Ysidro POE for allegedly smuggling undocumented persons for three reasons: (1) the Government has not given defense counsel notice of its intent to use the evidence at trial; (2) the Government cannot meet the four-element *Mayans* test for admission of 404(b) evidence; and (3) the evidence requires exclusion under Fed. R. Evid. 403.

### A. The Government Has Not Given Defense Counsel Notice of Its Intent to Use the 404(b) Evidence

Under Fed. R. Evid. 404(b), the government can only offer evidence of other acts if it provides the defense "reasonable notice in advance of trial." Rule 404(b) "mandates that the government provide [the defense with] notice even if the government intends to introduce the evidence for impeachment or for possible rebuttal." *United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999). The government must give the defense notice of its intent to use 404(b) evidence even if it does not know it will introduce the evidence "with absolute certainty." *Id.*

Trial commences in two weeks. The Government has not given the defense notice it intends to introduce evidence that in 2004, Mr. Hernandez was detained at the San Ysidro POE with two undocumented persons allegedly concealed inside his then-girlfriend's vehicle.

Since the Government has not provided defense counsel with reasonable notice of its intent to offer this 404(b) evidence, the Court should preclude its introduction for a purpose other than propensity.

### B. The Government Cannot Meet the Four-Element *Mayans* Test

Under Fed. R. Evid. 404(b), evidence of other acts will be admitted only of:

(1) the evidence tends to prove a material point;
(2) the prior act is not too remote in time;
(3) the evidence is sufficient to support a finding that the defendant committed the other act; and
(4) (in cases where knowledge and intent are at issue), the act is similar to the offense charged.

*United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994).

1. <u>the 404(b) evidence does not tend to prove a material point.</u>

Evidence of other acts may be admissible to prove a purpose other than propensity, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake . . ." Fed. R. Evid. 404(b).

The 2004 act is so ***dissimilar*** to the alleged offense currently at issue that the Government cannot claim the 2004 act establishes a proper purpose other than propensity. Moreover, since the defense has not been given notice of the Government's intent to offer the 2004 act for a proper purpose, the defense has no idea what the proper purpose for offering the evidence might be. *See Mayans*, 17 F.3d at 1181 (stating that "the government 'must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence'").

2. the prior act is too remote in time.

Mr. Hernandez's alleged prior act occurred in 2004, three years and seven months ago. Mr. Hernandez was only 16 years-old at the time he was detained at the POE on suspicion of alien smuggling. Therefore, the 2004 act is too remote in time and should be excluded.

3. the evidence is insufficient to support a finding that Mr. Hernandez committed the other act.

In 2004, Mr. Hernandez was allegedly a passenger in his alleged then-girlfriend, Diana Becerra's, vehicle. She was the alleged owner and driver of the vehicle. Diana Becerra allegedly admitted to border patrol agents that she agreed to smuggle two undocumented persons into the United States from Mexico for a friend of hers. Diana Becerra allegedly told agents that Mr. Hernandez was going to be paid $200 for his involvement. However, besides the uncorroborated, alleged statement of Mr. Hernandez's alleged then-girlfriend that he was involved, there is no evidence he agreed to smuggle an undocumented person into the United States for money. Moreover, there is no evidence that Mr. Hernandez made any incriminating statements. In fact, the ROI is devoid of any statements allegedly made by Mr. Hernandez. Importantly, no charges were ever brought against Mr. Hernandez for the 2004 event.

For the foregoing reasons, there is insufficient evidence to support a finding that Mr. Hernandez committed the 2004 alleged alien smuggling act.

1                        4.      the 2004 act is not similar to the offense charged.

2       In *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994), the court held that better
3  explained this factor of the *Mayans* test. In *Hinton*, the court held that to be admissible under
4  404(b), the act "must have a sufficient temporal nexus with the charged conduct." *Hinton*, 31
5  F.3d at 822.

6       The 2004 other act is wholly factually different than the current charge, let alone does
7  it have a temporal nexus with the charged offense. In 2004, Mr. Hernandez was allegedly a
8  passenger in his alleged then-girlfriend's vehicle. Mr. Hernandez's alleged then-girlfriend,
9  Diana Becerra, allegedly attempted to smuggle undocumented people into the United States
10 using the United States/Mexico International Border Patrol Crossing. Border patrol agents
11 allegedly ***actually*** found two undocumented persons concealed in the rear of Diana Becerra's
12 vehicle. Mr. Hernandez was released from custody and never charged with a crime.

13      In the instant case, Mr. Hernandez was driving his own vehicle. The Government alleges
14 that he was aiding the load pick-up truck by acting as a scout vehicle. Mr. Hernandez was not
15 detained at a border patrol checkpoint; he was detained in the parking lot at the Golden Acorn
16 Casino. Unlike the 2004 act, there were no undocumented persons concealed within
17 Mr. Hernandez's vehicle. The POE was not involved in the current charge and Mr. Hernandez
18 was the driver, not the passenger in the Ford Escort.

19      The 2004 act and the current charge involve different people, different places, and
20 different actions. There is no indication that the 2004 act has anything to do with the current
21 charge. Therefore, the 2004 act is not sufficiently similar to the current charge and should not
22 be admitted as evidence of a proper Fed. R. Evid. 404(b) purpose.

23      **C.      The 404(b) Evidence Should Be Excluded Under Fed. R. Evid. 403**

24      Even if the Court finds the Government has met the four-part *Mayans* test, it must
25 conduct a Fed. R. Evid. 403 balancing test. *See Mayans*, 17 F.3d at 1181 ("Rule 403, among
26 others, provides the necessary protection against unfairly prejudicial evidence which might
27 otherwise be admitted under Rule 404(b)").

28

1   The Government bears the burden of showing that the 404(b) evidence's probative value
is not substantially outweighed by its prejudicial effect. *See United States v. Connor*, 825 F.3d
1384, 1389 (9th Cir. 1987). Here, the Government cannot meet its burden.

The 2004 incident bears little, if any, probative value to the instant charge. The 2004 act involved different people, places and events. Moreover, if the jury hears that he was a passenger in a vehicle that contained two undocumented people, they will likely to find him guilty of the instant offense. Moreover, to prove the 404(b) act, the Government will have to call Diana Becerra and Agent Cadena. *See Crawford v. Washingon*, 541 U.S. 36, 67 (2004) (testimonial hearsay is inadmissible ***unless*** the witness is unavailable and the defendant has received a prior opportunity to cross-examine the witness). This will result in a mini-trial within Mr. Hernandez's trial, is likely to confuse the jury and waste everyone's time, precisely the type of instances that Fed. R. Evid. 403 was designed to prevent.

Therefore, the Court should exclude evidence of the 2004 act on Fed. R. Evid. 403 grounds.

**D.    The 2004 Incident Is Not Admissible to Impeach Mr. Hernandez at Trial Under Fed. R. Evid. 608**

Fed. R. Evid. 608 prohibits mention of the 2004 incident if Mr. Hernandez testifies at trial. In pertinent part, Rule 608 provides:

> **(b) Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness . . .
> The giving of testimony . . . does not operate as a waiver of the accused's . . . privilege against self-incrimination when examined with respect to matters that relate only to character for truthfulness.

Fed. R. Evid. 608(b).

1     Rule 608 prohibits mention of the 2004 act to impeach Mr. Hernandez, should he testify,
2 because the 2004 incident did not result in a conviction and is not probative of truthfulness. *See*
3 Fed. R. Evid. 608(b); *see also* Fed. R. Evid. 403.

4     Accordingly, the Court should preclude any mention of the 2004 act to impeach
5 Mr. Hernandez at trial.

6 **V.     THIS COURT SHOULD EXCLUDE EVIDENCE THAT ISAAC ESPINOZA WAS**
7        **DRIVING THE GREEN LOAD PICK-UP TRUCK ON APRIL 3, 2008**

8     Evidence that Isaac Espinoza drove the load pick-up truck on April 3, 2008, is irrelevant
9 and prejudicial at Mr. Hernandez's trial. *See* Fed. R. Evid. 401, 402 and 403.

10     This evidence may have been relevant to the agents' reasonable suspicion analysis on
11 April 6, 2008, but it is not relevant to the ultimate issue at trial: whether Mr. Hernandez was
12 involved in transporting undocumented persons.

13     The evidence is irrelevant because: (1) Mr. Hernandez was not driving the green pick-up
14 truck on April 3, 2008; (2) there were no undocumented persons found in the pick-up truck on
15 April 3, 2008; and there is no evidence suggesting that Mr. Hernandez was in any way
16 connected to the pick-up truck on April 3, 2008. The probative value of this evidence is slim
17 while the prejudicial effect would be disastrous to Mr. Hernandez. If the jury hears that his
18 passenger on April 6, 2008, Isaac Espinoza, was driving the same load pick-up truck three days
19 prior to the day that 16 undocumented persons were found inside of it, they will very likely
20 convict him.

21     For these reasons, Mr. Hernandez requests the Court preclude (from Mr. Hernandez's
22 trial) evidence that Mr. Hernandez's passenger, Isaac Espinoza, was driving the same green load
23 pick-up truck three days prior to the instant offense.

24

25

26

27

28

1  **VI.  THIS COURT SHOULD EXCLUDE STATEMENTS MADE BY DOMINIQUE**
2  **SMITH AND ROBERT BARRAZA THAT INCULPATE MR. HERNANDEZ**
3  **PURSUANT TO *CRAWFORD V. WASHINGTON***

In *Crawford*, 541 U.S. at 67, the United States Supreme Court re-affirmed the defendant's right to cross-examine witnesses against him. During Dominique Smith's interrogation, he told agents that he spoke with Isaac Espinoza and Mr. Hernandez at Viejas Casino. Likewise, Robert Barraza told agents that he was following Mr. Hernandez's vehicle on April 6, 2008, and made statements suggesting that Mr. Hernandez was smuggling undocumented people for money. These statements are testimonial. Neither Dominique Smith nor Robert Barraza testified at the suppression hearing. Mr. Hernandez did not have a prior opportunity to cross-examine Dominique Smith and Robert Barraza regarding these statements.

Therefore, under *Crawford*, the Government cannot introduce these statements unless the witnesses testify to the same statements at trial. *Crawford*, 541 U.S. at 67.

**VII.  THIS COURT SHOULD EXCLUDE EXPERT TESTIMONY OR, IN THE AL-TERNATIVE, HOLD A *KUMHO* HEARING**

1.  the government should be precluded from introducing expert testimony because it failed to give the defense proper notice under Fed. R. Crim. Proc. 16.

August 4, 2008Although Mr. Hernandez has yet to receive notice that the Government intends to introduce expert testimony regarding the significance of the alleged "tandem" driving and use of "scout" vehicles in alien smuggling ventures, he suspects the Government may attempt to introduce such expert testimony. He bases this assumption on the fact that SA Denise testified to the significance of both of these during the suppression motion. *See* RT 15, ln 21-23 ("Based on what you saw, do you have ***an opinion*** as to which vehicle was the scout vehicle and which one was the load vehicle?") (emphasis added). SA Denise continued to testify that in his experience as a border patrol agent, a scout vehicle acts as a "look[out]" for the load vehicle and "more often than not," tend to drive ahead of the load vehicle. RT 16, ln 3-8. Furthermore, SA Denise testified that "based on [his] background and training, . . . the scout vehicle and the load vehicle communicate with each other . . . by telephone." RT 16, ln 9-13.

Agent Remenar's ROI states that the Alpine, California area is notorious for alien smuggling; alien smugglers often use the Pine Valley exit to pick up undocumented people in order to avoid the border patrol checkpoint; and that the Ford Escort "drastically altering speeds" shortly after passing the Buckman Springs Road exit, a common alien smuggling tactic engaged in by the scout vehicle to locate law enforcement.  BS 12-14.

Since the Government has not given defense counsel notice that it intends to offer expert testimony at trial, any expert testimony regarding alien smuggling ventures should be excluded. *See* Fed. R. Evid. 16(a)(1)(E) (the Government must give the defense adequate notice if it intends to introduce expert opinion evidence).

2.   the court should hold a pre-trial hearing to determine the admissibility of the expert testimony.

The Court is the gatekeeper of what expert testimony is relevant and reliable.  Only if the Court has first determined that a certain expert's testimony is relevant and reliable can the jury hear such expert testimony.  This Court has the discretion to hold a hearing outside the presence of the jury to make such determination.  "Trial courts should be mindful of the difficulties posed when counsel must explore an expert's qualifications and the basis for the expert's opinion in the presence of the jury and, depending on the circumstances of the case, should give due consideration to requests that questioning occur unconstrained by that presence." *United States v. Alatorre,* 222 F.3d 1098, 1105 (9th Cir. 2000).

Mr. Hernandez requests a *Kumho* hearing regarding the qualifications and relevance of any experts' proposed testimony.  The fact that the testimony is not scientific is irrelevant to its admissibility.  *See United States v. Hankey*, 203 F.3d 1160, 1168-69 and fn. 7 (9th Cir.2000) (recognizing that the *Daubert* test is equally applicable to ***non-scientific*** expert testimony, even though the four *Daubert* factors need not be present in every case).  *But see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 159 (1999) ("the failure to apply one or another of the [Daubert factors] may be unreasonable, and hence an abuse of discretion") (Scalia, J., concurring).  Thus, any suggestion that some standard other than *Daubert* applies is erroneous.

Therefore, the Government should be required to meet the requirements of Fed. R. Evid. 104(b) and 704 before being allowed to elicit expert testimony from a border patrol agent regarding whether he believes, based on his training and experience, that Mr. Hernandez was acting as a lookout on April 6, 2008.

        3.    conclusion.

For the foregoing reasons, Mr. Hernandez requests the Court preclude expert opinion testimony regarding whether Mr. Hernandez was smuggling undocumented persons on April 6, 2008. In the alternative, Mr. Hernandez requests the Court hold a pre-trial *Kumho* hearing to determine the admissibility of such expert testimony.

## VIII. THIS COURT SHOULD ADMIT EVIDENCE OF DOMINIQUE SMITH AND ROBERT BARRAZA'S THIRD PARTY CULPABILITY

The Fifth, Sixth, and Fourteenth Amendments to the United States Constitution provide a defendant the fundamental right to present the jury with evidence of his theory of defense. As Justice Black explained, a defendant's "right to his day in court" is "basic in our system of jurisprudence" and includes "at a minimum, a right to examine witnesses against him, to offer testimony, and to be represented by counsel." *In re Oliver* (1948) 333 U.S. 257, 274; *accord Rock v. Arkansas* (1987) 483 U.S. 44, 55; *Crane v. Kentucky* (1986) 476 U.S. 683, 687, 690. The Supreme Court has explained:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's ***version of the facts*** as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas* (1967) 388 U.S. 14, 19) (emphasis added).

A defendant's right to present a defense is tantamount to insuring he receives due process of law and a fair trial pursuant to the safeguards embedded within the Fifth, Sixth and Fourteenth Amendments. The trial court's failure to allow Mr. Hernandez to present his theory of the defense resulted in a due process violation.

The right to present a theory of defense is violated where evidence is erroneously excluded at trial. *See Green v. Georgia* (1979) 442 U.S. 95, 96 ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case, its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment."

When the defendant's theory of the defense is third party culpability, courts should admit evidence that supports an alternative theory of how the crime might have been committed. *United States v. Crosby* (9th Cir. 1996) 75 F.3d 1343, 1347.

In *United States v. Vallejo* (9th Cir. 2001) 237 F.3d 1008, 1023, the Ninth Circuit wrote: "[fundamental] standards of relevancy . . . require admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged (quoting *Crosby, supra,* 75 F.3d at 1347). The Ninth Circuit recognized that the jury would want to know "[i]f the defendant didn't commit the crime then who did?" *Vallejo*, *supra*, 237 F.3d at 1023 (quoting *Crosby, supra,* 75 F.3d at 1347). Furthermore, the Ninth Circuit determined that "[e]ven if the defense theory is purely speculative . . . the evidence would be relevant." *Vallejo*, *supra*, 237 F.3d at 1023. "If the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create doubt." *Id*. (quoting 1A John Henry Wigmore, *Evidence in Trials at Common Law* section 139 (Tillers rev. ed 1983)). Accordingly, "it is the role of the jury to consider the evidence and determine whether it presents all kinds of fantasy possibilities or whether it presents legitimate alternative theories for how the crime occurred." *Vallejo*, *supra*, 237 F.3d at 1023.

On April 6, 2008, Dominique Smith and Robert Barraza were driving the load vehicle, which contained approximately 16 undocumented people in the vehicle. BS 14. They have each pleaded guilty to committing the instant offense. Mr. Hernandez has a Constitutional right to present evidence of third party culpability; namely that Dominique Smith and Robert Barraza committed the offense. Moreover, at the time of trial, Mr. Hernandez intends to introduce his

1 co-defendants' guilty pleas in the form of certified public records, which is an exception to the hearsay bar. *See* Fed. R. Evid. 902(4) (a certified public record is self-authenticating).

For these reasons, Mr. Hernandez requests the Court allow him to introduce evidence of his co-defendants' third party culpability.

### IX. CONCLUSION

For the foregoing reasons, Mr. Hernandez respectfully requests the Court to grant his motions in limine.

Dated: *August 4, 2008*                        *s/Kurt David Hermansen*
                                                Attorney for Defendant
                                                Email: KDH@KurtDavidHermansen.com

|   |   |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA |

| UNITED STATES OF AMERICA, | ) Case No.  08cr1436 LAB |
|---|---|
| Plaintiff, | ) |
| v. | ) CERTIFICATE OF SERVICE |
| CUAUHTLAHTOUAC HERNANDEZ, | ) |
| Defendant. | ) |

IT IS HEREBY CERTIFIED THAT:

I, KURT DAVID HERMANSEN, am a citizen of the United States and am at least eighteen years of age.  My business address is 110 West C Street, Suite 1810, San Diego, California 92101.

I have caused service of **NOTICE MOTIONS AND MOTIONS IN LIMINE.**

The following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

**Kurt David Hermansen**:  KDH@KurtDavidHermansen.com
**Frank M Murphy, III** fmlaw@san.rr.com, fmurphy1@san.rr.com
**Neil R Trop** neiltroplaw@hotmail.com
**Julie A Blair** julieannblair@hotmail.com
**U S Attorney CR** Efile.dkt.gc2@usdoj.gov
**Stephen Demik** stephen_demik@fd.org, sylvia_freeman@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>August 4, 2008</u>                     <u>       s/Kurt David Hermansen       </u>
                                                                                    Attorney for Defendant
                                                                         Email:  KDH@KurtDavidHermansen.com