1  KAREN P. HEWITT
   United States Attorney
2  STEVEN DE SALVO
   Assistant U.S. Attorney
3  California State Bar No. 199904
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-6330
   Facsimile: (619) 557-7032
6  steven.desalvo@usdoj.gov

7  Attorneys for Plaintiff
   United States of America

8
                      UNITED STATES DISTRICT COURT
9
                    SOUTHERN DISTRICT OF CALIFORNIA
10
   UNITED STATES OF AMERICA,           )   Criminal Case No.  08CR1436-LAB
11                                      )
                                        )   Date: August 18, 2008
12              Plaintiff,              )   Time: 2:00 a.m.
                                        )   Before Honorable Larry A. Burns
13        v.                            )   Courtroom 3
                                        )
14 ISAAC ESPINOZA (4) and              )   UNITED STATES' MOTIONS IN LIMINE
   CUAUHTLAHTOUAC HERNANDEZ (3),        )   TO
15                                      )
                Defendants.             )   (A)    EXCLUDE WITNESSES;
16                                      )   (B)    PROHIBIT    REFERENCE    TO
                                        )          PUNISHMENT,   EDUCATION,
17                                      )          HEALTH, AGE, and FINANCES;
                                        )   (C)    ADMIT EXPERT TESTIMONY;
18                                      )   (D)    ADMIT DUPLICATES;
                                        )   (E)    ADMIT DEMEANOR EVIDENCE;
19                                      )   (F)    LIMIT TESTIMONY OF
                                        )          CHARACTER WITNESSES;
20                                      )   (G)    PRECLUDE EXPERT TESTIMONY
                                        )          BY DEFENSE WITNESSES;
21                                      )   (H)    ADMIT 404(B) EVIDENCE;
                                        )   (I)    ADMIT AUDIOTAPE EVIDENCE
22                                      )
                                        )   TOGETHER   WITH   STATEMENT   OF
23                                      )   FACTS   AND   MEMORANDUM   OF
                                        )   POINTS AND AUTHORITIES
24                                      )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27                                      )
                                        )
28 _____ )

                                                              08CR1436-LAB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Steven De Salvo, Assistant United States Attorney, and hereby files its motions in limine in the above-captioned case.  Said memorandum is based upon the files and records of this case.

I

**STATEMENT OF THE CASE**

On April 30, 2008, a grand jury sitting in the Southern District of California returned a three-count indictment charging Defendants Dominick Smith ("Smith"), Robert Barraza ("Barraza"), Cuauhtlahtouac Hernandez ("Hernandez"), and Isaac Espinoza ("Espinoza") (collectively, "Defendants") with transportation of illegal aliens and aiding and abetting.  On May 6, 2008, Defendants were arraigned on the Indictment.  Defendants Barraza and Smith have pled guilty; trial is set for the remaining defendants, Espinoza and Hernandez, on August 19, 2008.

II

**STATEMENT OF FACTS**

On April 6, 2008, Supervisory Border Patrol Agent J. Dinise was performing anti-smuggling duties near Alpine, California. This area is located approximately 7 miles west and 12 miles north of the Tecate Port of Entry.  Agent Dinise was operating an unmarked agency vehicle.  At approximately 8:50 p.m., Agent Dinise observed two vehicles traveling eastbound on Interstate 8. The first vehicle was a blue Ford Escort; the second vehicle was a green Dodge Ram 2500. Agent Dinise observed the two vehicles traveling in close proximity to one another, making the same lane changes, and it appeared as though the Dodge Ram was riding in tandem with the Ford Escort.  Based on his background, training, and experience, Agent Dinise concluded that the Ford Escort a scout vehicle and that the Dodge Ram was intended to be a load vehicle.  The two occupants of the Ford Escort were later identified as Defendant Hernandez, who was driving, and Defendant Espinoza, who was the front seat passenger.

Border Patrol Agent Joseph Remenar, who was in a separate unmarked vehicle, assisted in the

1   surveillance. Both agents continued surveillance of the two vehicles as they approached the Willows
2   Road Exit on Interstate 8. At the Willows Road Exit, both vehicles exited the Interstate towards the
3   Viejas Casino, which is a common meeting place for smugglers to load contraband. The two vehicles
4   approached the main entrance of the Viejas Casino and parked together. Agent Dinise observed two
5   occupants exit from each vehicle. While outside, the occupants spoke to each other for approximately
6   ten minutes before re-entering their vehicles. The vehicles then exited the casino.

7       Border Patrol Agent Benjamin Blanchard, also in a separate vehicle, assisted in the surveillance
8   of the vehicles after they left the casino. Agent Blanchard observed the Ford driving just ahead of the
9   Dodge. The Dodge, however, passed the Ford as it continued eastbound on Interstate 8. Agent
10  Blanchard passed the Ford and continued surveillance on the Dodge as Agents Dinise and Remenar
11  continued surveillance on the Ford. Both vehicles continued driving eastbound in close proximity until
12  the Dodge began accelerating approximately two miles west of the Buckman Springs Road Exit of
13  Interstate 8. Agent Blanchard eventually lost track of the speeding Dodge.

14      Agents Dinise and Remenar continued following the Ford. The Ford drove eastbound on
15  Interstate 8 until it exited at Mountain Springs Road. As Agent Remenar drove eastbound on the
16  interstate, Agent Dinise exited at Mountain Springs and saw the Ford immediately turn around and head
17  westbound on Interstate 8 – a maneuver that Agent Dinise believed was an attempt to scout the
18  smuggling route for the Dodge. The Ford continued westbound on Interstate 8, exited at the Jacumba
19  Exit, and pulled into the Shell Gas Station located just off of the Interstate. Both Hernandez and
20  Espinoza exited the Ford and entered the convenience store located there. Hernandez and Espinoza
21  then returned to their vehicle and re-entered the westbound lanes of Interstate 8. Agents Dinise and
22  Blanchard continued to conduct surveillance on the vehicle as it traveled westbound, until it exited at
23  the Crestwood Road Exit. The Ford turned into the parking lot of the Golden Acorn Casino and parked
24  outside of the convenience store, near the gas pumps. Agents Dinise and Blanchard approached the
25  vehicle and identified themselves as Border Patrol Agents.

26      Meanwhile, Agent Remenar drove westbound on Interstate 8 towards the Jacumba Exit and
27  noticed a pickup truck on the shoulder of the highway. Agent Remenar recognized the truck as the
28  same Dodge Ram 2500 that had been driving in tandem with the Ford Escort. As Agent Remenar

approached the pickup, the pickup re-entered the westbound lanes of the Interstate. A few hundred yards later, the pickup then pulled onto the shoulder of the highway again. This area of the Interstate, which is less than two miles from the border, is a well- documented alien smuggling location. Agent Remenar passed the Dodge and temporarily lost sight of the activity on the shoulder.

In addition, Border Patrol Agents assigned to the Boulevard, California Border Patrol Station had been tracking a group of undocumented aliens that were headed towards the same area where the Dodge had pulled over to the shoulder. Agent Remenar believed that the Dodge had just loaded a group of undocumented aliens and relayed his observations to Border Patrol Agent Francisco Rivera. Agent Rivera was operating a marked Border Patrol pursuit sedan with fully functional emergency lights and audible siren. Agent Rivera, who had been waiting at the Jacumba Exit, entered onto the westbound lanes of Interstate 8 and saw the Dodge traveling westbound on Interstate 8 as it passed the McCain Valley Bridge, located approximately 1.5 miles east of the Ribbonwood Road Exit. Agent Rivera requested additional marked units to assist. Agent Rivera initiated his emergency lights and audible siren in attempt to stop the Dodge. The Dodge failed to yield to Agent Rivera's marked agency vehicle and attempted to flee, exiting Interstate 8 at the Kitchen Creek Road Exit. Border Patrol agents successfully deployed tire deflation devices at the exit. With tires spiked, the Dodge moved erratically along the off-ramp, then accelerated and drove through the stop sign. The Dodge re-entered the interstate westbound, then cut across the median and traveled the wrong way against eastbound traffic for 100 yards before crashing at the shoulder. Defendants Smith and Barrazza fled from the truck and were eventually apprehended.

Five aliens were apprehended next to the Dodge. Another 12 aliens were apprehended approximately 50 yards south of the Dodge attempting to flee. All of the aliens admitted to being citizens and nationals of Mexico. When asked to present any immigration documents that would allow them to enter into the United States legally, all of the aliens stated that they had no such documents. All of the aliens were then placed under arrest for being present in the United States not in possession of any valid immigration documents.

Agents detained three material witnesses: Clemente Morales-Chaparro, Roberto Aguilar-Peez, and Rogelio Oplea-Mendoza. Each stated that they were citizens and nationals of Mexico illegally

present in the United States. They admitted to entering the United States illegally. They all stated that they were going to pay between $1,800.00 to $2500.00 to be smuggled into the United States. None of the aliens made statements directly implicating Hernandez or Espinoza.

Agents apprehended cell phone records from Barraza, who was in the Dodge, and Espinoza, who was in the Ford. The cell phone records show that Espinoza called Barraza, and Barraza called Espinoza, before the vehicles were seen driving in tandem.

Defendant Hernandez, after being advised of his Miranda rights, stated that he had left his house in Chula Vista to go the Golden Acorn Casino and that his friend Espinoza joined him. He contended that he drove to the casino without making any stops. He denied traveling with anyone else or any other vehicles. When confronted with the fact that agents had observed him and Espinoza stopping and meeting with the other co-defendants, Hernandez changed his story, stating that he got lost and had to call his girlfriend for directions. However, he continued to deny that he followed the Dodge or spoke to anyone in the Dodge.

Defendant Espinoza, after being advised of his Miranda rights, stated that he and his friend, Hernandez, went from his house in Chula Vista to the casino. He refused to make any additional statements.

### III

### *IN-LIMINE* MOTIONS OF THE UNITED STATES

**A.    THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

//

//

//

**B.    DEFENDANT SHOULD BE PROHIBITED FROM ARGUING PUNISHMENT, EDUCATION, HEALTH, AGE, FAMILY CIRCUMSTANCES, AND FINANCES TO THE JURY**

Defense counsel may wish to raise potential penalties Defendant faces if convicted. Information about penalty and punishment draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromised verdicts, and confuses the issues to be decided. United States v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995). In federal court, the jury is not permitted to consider punishment in deciding whether the Government has proved its case against the defendant beyond a reasonable doubt. 9th Cir. Crim. Jury Instr. §7.4 (2003). Any such argument or reference would be an improper attempt to have the jury unduly influenced by sympathy for the defendant and prejudiced against the Government. See 9th Cir. Jury Inst. § 3.1 (2000).

Therefore, the Government hereby moves in limine for the Court to order defense counsel not to mention any penalty or punishment to the jury or to solicit testimony regarding the same.

Likewise, the defense should be prohibited from making reference to or arguing about Defendant's education, health, age, family circumstances, and finances. Defendant may attempt to introduce evidence designed to improperly arouse the sympathy of the jury, such as evidence of his age or personal background. The court should preclude Defendant from presenting such evidence under the Federal Rules of Evidence 401, 402, and 403.

Testimony about Defendant's education, health, age, family circumstances, and finances are patently irrelevant to the issues in this case. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states the evidence "which is not relevant is not admissible." Testimony about Defendant's age and personal background are of no consequence to the determination of any essential facts in this case. Likewise, a defendant's right to testify is not absolute. That right does not authorize a defendant to present irrelevant testimony. See, United States v. Adams, 56 F.3d 737 (7th Cir. 1995) (proper to exclude video of defendant's children opening gifts on Christmas because video would only develop sympathy for accused and would not establish defendant's whereabouts two days earlier).

Furthermore, the introduction of such evidence would violate Fed. R. Evid. 403. That rule

1   allows a court to exclude relevant evidence where the danger of unfair prejudice or confusion of the

2   issues outweighs the probative value of such evidence.  A trial court has "wide latitude" to exclude such

3   prejudicial or confusing evidence.  See United States v. Saenz, 179 F.3d 686, 689 (9th Cir. 1999).  The

4   admission of testimony about defendant's education, health, age, and finances will tend "to induc[e]

5   decisions on a purely emotional basis . . ." in violation of Rule 403.  See, Fed. R. Evid. 403 Advisory

6   Committee Notes; United States v. Ellis, 147 F.3d 1131, 1135 (9th Cir. 1998).  Juries should not be

7   influenced by sympathy.  9th Cir. Crim. Jury Instr. § 3.1 (2003).

8        Thus, the Government moves *in limine* for the court to order defense counsel not to introduce

9   such testimony from Defendant or from any witnesses.

10       **C.    ADMIT EXPERT TESTIMONY BY GOVERNMENT WITNESSES**

11       The United States expects to present expert testimony by a Border Patrol agent that the tandem

12  driving by the two vehicles in this case is consistent with the use of a "load vehicle" and "scout vehicle"

13  commonly used in the smuggling of aliens.  The agent will also testify about other ways in which in

14  which the load and scout vehicles were driven and their significance to carrying out the smuggling in

15  this case.  The agent has testified in federal court on this topic previously.  Court should admit this

16  expert testimony.

17       If specialized knowledge will assist the trier-of-fact in understanding the evidence or

18  determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in

19  question.  Fed. R. Evid. 702.  It is within the sound discretion of the trial judge to determine whether

20  or not expert testimony would assist in understanding the facts at issue.  United States v. Alonso, 48

21  F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).  An

22  expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon

23  are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  An expert may

24  provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact.  Fed.

25  R. Evid. 704.

26       **D.    THE COURT SHOULD ALLOW THE ADMISSION OF DUPLICATES**

27       In the alternative, copies of all of the above-mentioned documents items were made by the case

28  agent on the night of Defendant's arrest.  In the event that the original documents and items that were

                                                        7                                    08CR1436-LAB

1 in Defendant's possession are no longer available, the Court should allow the introduction of copies

2 of these documents and items.  The Government anticipates having a witness with knowledge of both

3 the originals in Defendant's possession as well as the copies that were made at the time of his arrest.

4     A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised

5 as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the

6 duplicate instead of the original. Fed.R.Evid. 103.  The foundation for these duplicates can be

7 established, so they should be admitted at trial.

8     **E.     THE COURT SHOULD ADMIT DEMEANOR EVIDENCE**

9     Evidence regarding a defendant's demeanor and physical appearance is admissible as

10 circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew that

11 aliens were being smuggled.  Fed.R.Evid. 701;  United States v. Hursh, 217 F.3d 761  (9th Cir. 2000)

12 (jury may consider defendant's nervousness during questioning at a port of entry); United States v.

13 Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (it is within the ordinary province of jurors to

14 draw inferences from an undisputed fact such as a defendant's nervousness at Calexico Port of Entry);

15 United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (jury could infer guilty knowledge from

16 a defendant's apparent nervousness and anxiety during airport inspection); United States v. Lui, 941

17 F.2d 844, 848 (9th Cir. 1991) (jury could consider guilty knowledge from a defendant's acting

18 disinterested during airport inspection).

19     It is anticipated that Government witnesses may testify about Defendant's demeanor at the time

20 he was apprehended.  United States agents may properly testify to Defendant's behavior, demeanor, and

21 physical appearance, because they have personal knowledge based upon their observations of

22 Defendant.  Accordingly, this evidence should be admitted.

23     **F.     TESTIMONY OF CHARACTER WITNESSES**

24     In introducing positive character evidence, a defendant must restrict himself to evidence

25 regarding "law abidingness" and honesty.  A defendant may not introduce evidence concerning specific

26 instances of good conduct, lack of a prior record, or propensity to engage in specific bad acts such as

27 drug smuggling or distribution.  United States v. Hedgecorth, 873 F.2d 1307, 1313 (9th Cir. 1987)

28 ("[W]hile a defendant may show a characteristic for lawfulness through opinion or reputation

1  testimony, evidence of specific acts is generally inadmissible.") (citations omitted); <u>United States v.</u>

2  <u>Barry</u>, 814 F.2d 1400, 1403 (9th Cir. 1987); <u>Government of Virgin Islands v. Grant</u>, 775 F.2d 508, 512

3  (3d Cir. 1985) ("[T]estimony that one has never been arrested is especially weak character evidence".)

4       Any character evidence Defendant seeks to introduce at trial, therefore, should be limited to

5  evidence regarding his law abidingness and honesty.  Character evidence beyond the scope of these two

6  traits would be inappropriate.

7       **G.    PRECLUDE EXPERT TESTIMONY BY DEFENSE WITNESSES**

8       Defendant must disclose written summaries of testimony that Defendant intends to use under

9  Rules 702.703, or 705 of the Federal Rules of Evidence as evidence at trial.  The summaries are to

10  describe the witness's opinions, the bases and reasons for those opinions, and the witness's

11  qualifications.  While defense counsel may wish to call an expert to testify, Defendant has provided

12  neither notice of any expert witness, nor any reports by expert witnesses.  Accordingly, Defendant

13  should not be permitted to introduce any expert testimony if she fails to disclose such information prior

14  to trial.

15       If the Court determines that Defendant may introduce expert testimony, the United States

16  requests a hearing to determine this expert's qualifications and relevance of the expert's testimony

17  pursuant to Federal Rule of Evidence 702 and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150

18  (1999).  <u>See</u> <u>United States v. Rincon</u>, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision

19  to not admit the defendant's proffered expert testimony because there had been no showing that the

20  proposed testimony related to an area that was recognized as a science or that the proposed testimony

21  would assist the jury in understanding the case); <u>see also</u> <u>United States v. Hankey</u>, 203 F.3d 1160, 1167

22  (9th Cir.), <u>cert. denied</u>, 530 U.S. 1268 (2000).

23       **H.    THE COURT SHOULD ADMIT RULE 404(b) EVIDENCE**

24       The United States is notifying Defendant of its intent to use "other crimes" evidence of

25  Defendant's prior involvement in an ongoing alien smuggling conspiracy, as a driver for the alien

26  smuggling organization, under Rule 404(b) to show planning, intent, and knowledge of the alien

27  smuggling in this case. The United States anticipates that this evidence will be introduced by testimony

28  from a co-conspirator who is not a defendant in this case.

1   This evidence meets the Ninth Circuit's requirements for introducing evidence under Rule

2   404(b).  First, the evidence proves a material issue in the case – Defendant's intent to aid and abet the

3   transportation of aliens.  Second, the prior crime – in which Defendant drove vehicles involved in

4   transporting aliens – is identical to the crime charged here.  Third, the evidence is supported by

5   testimony from a co-conspirator who had personal knowledge of Defendant's involvement.  Fourth, the

6   witness is expected to testify that Defendant's prior crimes occurred in 2006, which is not remote in

7   time.  Accordingly, this evidence is highly probative and outweighs the danger of unfair prejudice.  See

8   United States v. Montgomery, 150 F.3d 983, 1000 (9th Cir. 1998).

9   **I.    THE COURT SHOULD ADMIT THE AUDIO TAPE OR TRANSCRIPT OF THE POST-MIRANDA STATEMENT**

10      There is a tape recording of Defendant's post-arrest statement.  Because this admission by

11  Defendant tend to prove the elements of the charged crime, the tape is relevant.  See Fed. R. Evid. 401.

12  These statements are admissions of a party opponent admissible under Fed. R. Evid. 801(d)(2).  The

13  United States intends to play this tape.  The United States also will provide a certified transcript of the

14  hearing as part of its case-in-chief.

15      The Government also can authenticate the tape because it is a self-authenticating document

16  under Rule 902 and Rule 1005 of the Federal Rules of Evidence.  "Extrinsic evidence of authenticity

17  as a condition precedent to admissibility is not required with respect to . . . [d]omestic public documents

18  . . . bearing a seal purporting to be that of the United States . . . ."  Fed. R. Evid. 902(1). The audio tape

19  of Defendant's hearing before an Immigration Judge have been certified as accurate by an interpreter

20  for the U.S. Immigration Court.  The interpreter attested to this accuracy by applying his official

21  governmental seal.  Thus, the tape is self-authenticating and it should be admitted along with the

22  accompanying transcript.  See United States v. Lechuga, 975 F.2d 397, 399 (7th Cir.1992) (applying

23  Rule 902 to an audio tape).

24                                                **IV**

25                                          **CONCLUSION**

26      For the reasons set forth above, the United States respectfully requests that the Court grant

27  its motions in limine.

28

1    DATED: August 6, 2008

2                                            Respectfully submitted,

3                                            KAREN P. HEWITT
                                             United States Attorney
4
                                             /s/ Steven De Salvo
5
                                             STEVEN DE SALVO
6                                            Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1436-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| ISAAC ESPINOZA (4) and | ) | |
| CUAUHTLAHTOUAC HERNANDEZ (3), | ) | |
| | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, STEVEN DE SALVO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S MOTIONS IN LIMINE** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Julie Blair
Kurt Hermansen

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2008.

/s/ ***Steven De Salvo***

STEVEN DE SALVO

08CR1436-LAB