KAREN P. HEWITT
United States Attorney
STEVEN DE SALVO
Assistant U.S. Attorney
California State Bar No. 199904
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-7032
steven.desalvo@usdoj.gov

Attorneys for Plaintiff
United States of America

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 08CR1436-LAB |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S TRIAL MEMORANDUM** |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Date:    August 19, 2008 |
| CUAUHTLAHTOUAC HERNANDEZ (2), | ) | Time:    9:00 a.m. |
| | ) | Hon.:    Larry A. Burns |
| | ) | Court:   9 |
| Defendants. | ) | |

COMES NOW Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and STEVEN DE SALVO, Assistant United States Attorney, and hereby files its Trial Memorandum.

//

//

//

//

//

//

//

//

//

# I.

## STATEMENT OF THE CASE

### A.    CHARGES & INDICTMENT

On April 30, 2008, a grand jury sitting in the Southern District of California returned a three-count indictment charging Defendants Dominick Smith ("Smith"), Robert Barraza ("Barraza"), Cuauhtlahtouac Hernandez ("Hernandez"), and Isaac Espinoza ("Espinoza") (collectively, "Defendants") with transportation of illegal aliens and aiding and abetting. On May 6, 2008, Defendants were arraigned on the Indictment.

### B.    TRIAL STATUS

Trial involving Defendant Hernandez is scheduled for August 19, 2008 at 9:00 a.m., before the Honorable Larry A. Burns. The Government anticipates that its case-in-chief will take two days.

### C.    STATUS OF DEFENDANT

Defendant Hernandez has been released on bond. The other three Defendants have pleaded guilty to the Indictment and remain in custody. Sentencing hearings are pending for these three Defendants.

### D.    STATUS OF COUNSEL

Defendant Hernandez is represented by Kurt Hermansen, who was appointed.

### E.    INTERPRETER

The Government anticipates an interpreter will be needed for the material witnesses.

### F.    JURY WAIVER

Defendant has not waived trial by jury.

//

//

1    **G.    PRETRIAL MOTIONS**

2        All Defendants filed motions to compel discovery/preserve
3    evidence. Defendant Hernandez filed motions to suppress evidence on
4    the basis of the fourth amendment and suppress statements on the basis
5    of Miranda. On June 16, 2008, following an evidentiary hearing, the
6    court denied the suppression motions. The Untied States and Defendant
7    Hernandez each have filed motions in limine, and each have filed
8    oppositions; a hearing is set for August 18, 2008. In addition, the
9    United States has filed a motion to continue the trial, with a
10    requested hearing date on the motion set for August 18, 2008.

11    **H.    STIPULATIONS**

12        The parties have not agreed to any stipulations.

13    **I.    DISCOVERY**

14        To date, the United States has produced 287 pages of discovery,
15    DVDs of witness and defendant statements, and dispatch tapes. The
16    Government has complied, and will continue to comply, with its
17    discovery obligations. Defendant has not provided any reciprocal
18    discovery.

19                                    **II**

20                          **STATEMENT OF FACTS**

21        On April 6, 2008, Supervisory Border Patrol Agent J. Dinise was
22    performing anti smuggling duties near Alpine, California. This area
23    is located approximately 7 miles west and 12 miles north of the Tecate
24    Port of Entry. Agent Dinise was operating an unmarked agency vehicle.
25    At approximately 8:50 p.m., Agent Dinise observed two vehicles
26    traveling eastbound on Interstate 8. The first vehicle was a blue Ford
27    Escort; the second vehicle was a green Dodge Ram 2500. Agent Dinise
28    observed the two vehicles traveling in close proximity to one another,

making the same lane changes, and it appeared as though the Dodge Ram was riding in tandem with the Ford Escort. Agent Dinise concluded that one car was a scout vehicle and that the other was a load vehicle. The two occupants of the Ford Escort were later identified as Defendant Hernandez, who was driving, and Defendant Espinoza, who was the front seat passenger.

Agent Dinise and Border Patrol Agent Joseph Remenar, who was in a separate unmarked vehicle, continued surveillance of the two vehicles as they approached the Willows Road Exit on Interstate 8. At the Willows Road Exit, both vehicles exited the Interstate towards the Viejas Casino, which is a common meeting place for smugglers to load contraband. The two vehicles approached the main entrance of the Vieias Casino and parked together. Agent Dinise observed two occupants exit from each vehicle. While outside, the occupants spoke amongst themselves for approximately ten minutes before re-entering their vehicles. The vehicles then exited the casino.

Border Patrol Agent Benjamin Blanchard, also in a separate vehicle, assisted in the surveillance of the vehicles after they left the casino. Agent Blanchard observed the Ford driving just ahead of the Dodge. The Dodge, however, passed the Ford as it continued eastbound on Interstate 8. Agent Blanchard passed the Ford and continued surveillance on the Dodge as Agents Dinise and Remenar continued surveillance on the Ford. Both vehicles continued driving eastbound in close proximity until the Dodge began accelerating approximately two miles west of the Buckman Springs Road Exit of Interstate 8. Agent Blanchard eventually lost track of the speeding Dodge.

1    Agents Dinise and Remenar continued following the Ford.  The Ford
2 drove eastbound on Interstate 8 until it exited at Mountain Springs
3 Road. As Agent Remenar drove eastbound on the interstate, Agent Dinise
4 exited at Mountain Springs and saw the Ford immediately turn around
5 and head westbound on Interstate 8 – a maneuver that Agent Dinise
6 believed was at attempt to scout the smuggling route for the Dodge.
7 The Ford continued westbound on Interstate 8, exited at the Jacumba
8 Exit, and pulled into the Valero Gas Station located just off of the
9 Interstate. Both Hernandez and Espinoza exited the Ford and entered
10 the convenience store located.  Hernandez and Espinoza then returned
11 to their vehicle and re-entered the westbound lanes of Interstate 8.
12 Agents Dinise and Blanchard continued to conduct surveillance on the
13 vehicle as it traveled westbound, until it exited at the Crestwood
14 Road Exit. The Ford turned into the parking lot of the Golden Acorn
15 Casino and parked outside of the convenience store, near the gas
16 pumps. Agents Dinise and Blanchard approached the vehicle and
17 identified themselves as Border Patrol Agents.

18    Meanwhile, Agent Remenar drove westbound on Interstate 8 towards
19 the Jacumba Exit and noticed a pickup truck on the shoulder of the
20 highway.  Agent Remenar recognized the truck as the same Dodge Ram
21 2500 that had been driving in tandem with the Ford Escort. As Agent
22 Remenar approached the pickup, the pickup re-entered the westbound
23 lanes of the Interstate. A few hundred yards later, the pickup then
24 pulled onto the shoulder of the highway again. This area of the
25 Interstate, which is less than two miles from the border, is a well
26 documented alien smuggling location.  Agent Remenar passed the Dodge
27 and temporarily lost sight of the activity on the shoulder.

28

1    In addition, Border Patrol Agents assigned to the Boulevard,
2  California Border Patrol Station had been tracking a group of
3  undocumented aliens that were headed towards the same area where the
4  Dodge had pulled over to the shoulder.  Agent Remenar believed that
5  the Dodge had just loaded a group of undocumented aliens and relayed
6  his observations to Border Patrol Agent Francisco Rivera.

7    Agent Rivera was operating a marked Border Patrol pursuit sedan
8  with fully functional emergency lights and audible siren.  Agent
9  Rivera, who had been waiting at the Jacumba Exit, entered onto the
10  westbound lanes of Interstate 8 and saw the Dodge traveling westbound
11  on Interstate 8 as it passed the McCain Valley Bridge, located
12  approximately 1.5 miles east of the Ribbonwood Road Exit. Agent Rivera
13  requested additional marked units to assist.  Agent Rivera initiated
14  his emergency lights and audible siren in attempt to stop the Dodge.
15  The Dodge failed to yield to Agent Rivera's marked agency vehicle and
16  attempted to flee, exiting Interstate 8 at the Kitchen Creek Road
17  Exit.  Border Patrol agents successfully deployed tire deflation
18  devices at the exit.  With tires spiked, the Dodge moved erratically
19  along the off-ramp, then accelerated and drove through the stop sign.
20  The Dodge re-entered the interstate westbound, then cut across the
21  median and traveled the wrong way against eastbound traffic for 100
22  yards before losing crashing at the shoulder.  Defendants Smith and
23  Barrazza fled from the truck and were eventually apprehended.

24    Five aliens were apprehended next to the Dodge. Another 12
25  aliens were apprehended approximately 50 yards south of the Dodge
26  attempting to flee. All of the aliens admitted to being citizens and
27  nationals of Mexico. When asked to present any immigration documents
28  that would allow them to enter into the United States legally, all of

the aliens stated that they had no such documents. All of the aliens were then placed under arrest for being present in the United States not in possession of any valid immigration documents.

Agents detained three material witnesses: Clemente Morales-Chaparro, Roberto Aguilar-Peez, and Rogelio Oplea-Mendoza. Each stated that they were citizens and nationals of Mexico illegally present in the United States. They admit to entering the United States illegally. They all stated that they were going to pay between $1,800.00 to $2500.00 to be smuggled into the United States. None of the aliens made statements directly implicating Hernandez or Espinoza.

Agents apprehended cell phone records from Barraza, who was in the Dodge, and Espinoza, who was in the Ford. The cell phone records show that Espinoza called Barraza, and Barraza called Espinoza, before the vehicles were seen driving in tandem. In addition, when Espinoza was apprehended, Agent Dinise recognized him as the same person he had observed driving the green Dodge pickup truck three days earlier. Agents arrested both Hernandez and Espinoza.

**III**

**POST-ARREST STATEMENTS BY HERNANDEZ AND ESPINOZA**

Defendant Hernandez, after being advised of his Miranda rights, stated that he had left his house in Chula Vista to go the Golden Acorn Casino and that his friend Espinoza joined him. He contended that he drove to the casino without making any stops. He denied traveling with anyone else or any other vehicles. When confronted with the fact that agents had observed him and Espinoza stopping and meeting with the other co-defendants, Hernandez changed his story, stating that he got lost and had to call his girlfriend for

1  directions.  However, he continued to deny that he followed the Dodge

2  or spoke to anyone in the Dodge.

3  //

4  //

5

6                                    **IV**

7                    **DEFENDANTS' CRIMINAL RECORDS**

8      Defendants have no criminal convictions.  Hernandez, at the

9  age of 16, was a passenger along with three illegal aliens that was

10  apprehended at the San Ysidro Port of Entry in 2004.  Hernandez did

11  not make any post-arrest statement and he was later released.

12                                     **V**

13                            **LEGAL ISSUES**

14  **A.   Elements of the Charged Offenses**

15      1.   Elements of Title 8, United States Code, Section
         1324(a)(1)(A)(ii) and (v)(II), Aiding and Abetting in the
16           Transportation of Illegal Aliens

17      Defendant is charged in Counts One, Two, and Three with aiding

18  and abetting the transportation of illegal aliens.  The essential

19  elements of a violation of 8 U.S.C. Section 1324(a)(1)(A)(ii) and

20  (v)(II), Aiding and Abetting the Transportation of Illegal Aliens are:

21           a.   The person named in the count was an alien;

22           b.   The person was not lawfully in the United States;

23           c.   The defendant knew, or was in reckless disregard of
                  the fact that the person was not lawfully in the
24                United States;

25           d.   The defendant knowingly transported or moved, or
                  attempted to transport or move the person in order to
26                help the person remain in the United States illegally;
                  and

27

28           e.   The defendant aided or abetted in the commission of
                  the preceding acts.

                                    8                      08CR1436-LAB

1    The Ninth Circuit has stated that "an aider and abetter is a

2  person who knowingly and intentionally helps another to commit a

3  crime." United States v. Cruz-Ventura, 979 F.2d 146, 149 (9th Cir.

4  1992) (citing Manual of Model Criminal Jury Instructions for the Ninth

5  Circuit, § 5.01 (1992)). In order to prove that Defendant aided and

6  abetted in the transportation of illegal aliens, the Government must

7  prove beyond a reasonable doubt that: (1) the crime of transportation

8  of illegal aliens was committed by someone; (2) the defendant

9  knowingly and intentionally aided, counseled, commanded, induced or

10  procured that person to commit each element of transportation of

11  illegal aliens; and (3) the defendant acted before the crime was

12  completed. Ninth Circuit Model Jury Instructions, 5.1 Aiding and

13  Abetting; see also United States v. Garcia, 400 F.3d 816, 819 n.2 (9th

14  Cir. 2005) (stating the Government must prove four elements for aiding

15  and abetting liability: (1) that the accused had the specific intent

16  to facilitate the commission of a crime by another; (2) that the

17  accused had the requisite intent of the underlying substantive

18  offense; (3) that the accused assisted or participated in the

19  commission of the underlying substantive offense; and (4) that someone

20  committed the underlying substantive offense). It is insufficient

21  that the Government prove that the defendant merely associated with

22  the individual committing the crime, that the defendant unknowingly

23  or unintentionally helped, or that the person was merely present at

24  the time the crime was committed. See United States v. Burgess, 791

25  F.2d 676, 680 (9th Cir. 1986). The evidence must show beyond a

26  reasonable doubt that the defendant acted with the knowledge and

27  intention of helping that person transport illegal aliens. See id.

28  at 679.

1    Aiding and abetting the commission of a crime is simply a

2  different means of committing the given crime, not a separate offense.

3  Garcia, 400 F.3d at 820 (rejecting defendant's claim that aiding and

4  abetting is a separate offense from substantive crime).  The Ninth

5  Circuit has stated that "[a]iding and abetting is not a separate and

6  distinct offense from the underlying substantive crime, but is a

7  different theory of liability for the same offense."  Id.; see also,

8  United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988).

9  Therefore, regardless of whether a defendant is charged and convicted

10 as a principal or as an aider and abettor of the underlying crime, the

11 defendant will be liable as a principal.  See, e.g., 18 U.S.C. § 2.

12 **B.    <u>Expert Testimony</u>**

13    The United States has given notice that USBP Jeffrey Dinise may

14 testify regarding the transportation of illegal aliens.  Specifically,

15 Agent Dinise may testify regarding the transportation of illegal

16 aliens in the east San Diego County region and the use of scout

17 vehicles to facilitate the transportation of illegal aliens.

18                                    **VI**

19                              **<u>WITNESSES</u>**

20    The Government reserves the right to change the order of,

21 substitute, or add or omit one or more witnesses.  Presently, the

22 Government may call the following witnesses during its case-in-chief:

23    1.    Jeffrey Dinise, USBP

24    2.    Joseph Remenar, USBP

25    3.    Hiram Cuevas, USBP

26    4.    Benjamin Blanchard, USBP

27    5.    Francisco Rivera, USBP

28    6.    Clemente Morales-Chaparro, material witness

7.    Roberto Aguilar-Peez, material witness

8.    Rogelio Oplea-Mendoza, material witness.

9.    Diana Becerra (per Fed. R. Evid. 404(b))

//

//


**V**

**EXHIBIT LIST**

The Government will provide an exhibit list on the morning of trial.  The United States intends to offer into evidence some or all of the following exhibits:

1.    Photographs of both vehicles

2.    Map(s) of area in question

3.    Cellular telephones seized from Defendants

The Government will make its exhibits available to the Defendant for examination in advance of trial.  The Government further requests a reasonable opportunity to examine Defendant's exhibits before trial.

**VI**

**PROPOSED VOIR DIRE**

1.    The Court will instruct you about the law. Will you follow the law as given by the Court and disregard any idea or notion you have about what the law is or should be?

2.    The United States will be calling witnesses who are employed by United States Border Patrol, and possibly other branches of the Department of Homeland Security. Does anyone have family members or close friends who work, or have worked, for any of those agencies? Would that prevent you from being fair and impartial?

3.  Has anyone had an unpleasant or negative experience with any law enforcement personnel? If so, please describe. Would that cause you to be biased against law enforcement?

4.  Has anyone ever had any disputes with any agency of the United States Government? If so, please describe.

5.  Have you or any relatives or close friends ever been accused of, or charged with, a crime involving alien smuggling?

6.  Has anyone had any training in the law? If so, please explain.

7.  Will you be able to put aside any feelings of sympathy or pity for the defendant, if you have any, when deciding this case?

8.  Does everybody understand that the defendant is entitled to a fair trial? Does everybody understand that the United States is also entitled to a fair trial?

9.  Does anyone have any moral or religious reservations that might prevent you from standing in judgment of another human being?

10. The defendants in this case are charged with aiding and abetting the transportation of human beings within the United States. Does anybody have strong feelings or opinions about United States immigration laws that would prevent you from viewing the evidence impartially?

11. Regardless of your position on the legalization or criminalization of immigration, will you be able to follow the law of the United States as it presently stands and as

the judge instructs you regarding the criminal smuggling of human beings?

12. Has anyone been a member of an organization involved the "immigration debate"?  Explain.

13. Does anyone believe the current immigration laws are too strict?  Please explain.

14. Does anyone believe the current immigration laws are too lenient?

15. Does anyone feel strongly about the United States' immigration policies?  Explain.

16. The United States will call many law enforcement personnel as witnesses.  Would that prevent you from being fair and impartial?

17. Do any of you feel that it should not be a crime to enter - or assist someone else to enter - the United States illegally?

18. Would any of you have difficulty convicting someone who did not directly commit the offense of transporting aliens, but who aided or assisted another in the commission of that crime?

## VII

### JURY INSTRUCTIONS

The Government will submit proposed jury instructions under separate cover.

Dated: August 15, 2008              Respectfully submitted,


                                    KAREN P. HEWITT
                                    United States Attorney


                                    s/ Steven De Salvo
                                    STEVEN DE SALVO
                                    Assistant United States Attorney












                        UNITED STATES DISTRICT COURT

                       SOUTHERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,        )        Case No. 08CR1436-LAB
                                 )
                Plaintiff,       )
                                 )
         v.                      )
                                 )        CERTIFICATE OF SERVICE
                                 )
CUAUHTLAHTOUAC HERNANDEZ (2),    )
                                 )
                Defendant.       )
_____)


IT IS HEREBY CERTIFIED THAT:

     I, STEVEN DE SALVO, am a citizen of the United States and am at

least eighteen years of age.  My business address is 880 Front Street,

Room 6293, San Diego, California 92101-8893.

                                14                      08CR1436-LAB

1     I am not a party to the above-entitled action.  I have caused

2  service of the Government's Trial Memorandum on the following parties

3  by electronically filing the foregoing with the Clerk of the District

4  Court using its ECF System, which electronically notifies them.

5     KURT HERMANSEN

6     I declare under penalty of perjury that the foregoing is true and

7  correct.

8     Executed on August 15, 2008.

10                   s/ Steven De Salvo